IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:12-CR-207-BO
NO. 5:14-CV-633-BO

| | |
|---|---|
| JEFFREY A. SAKOMAN, ) | |
| Petitioner, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| Respondent. ) | |

This matter is before the Court on petitioner's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 [DE 36] and the government's motion to dismiss [DE 40]. A hearing was held before the undersigned on April 27, 2015, in Raleigh, North Carolina, and the matter is ripe for ruling. For the following reasons, both motions are denied.

## BACKGROUND

This case raises grave concerns regarding the rules of ethics and the proper attorney-client relationship. When petitioner, Jeffrey Sakoman, first learned that the United States Attorney's office in the Eastern District of North Carolina (EDNC) had evidence against him supporting the charge of receipt of child pornography, he turned where many people turn to obtain information on topics with which they are unfamiliar: the internet. An internet search led him to the Liberty Bell Law Group (Liberty Bell), located in Burbank, California. After a telephone conversation with Liberty Bell managing partner Gina Tennan, Mr. Sakoman hired Liberty Bell to represent him for the sum of $25,000, exclusive of trial. [Pet. Ex. 1]. The engagement letter stated that Liberty Bell might "hire attorneys on an individual contract basis to assist" with the case and, in that instance, would divide the legal fee with co-counsel. [*Id*.]. Mr.

Sakoman initialed next to these provisions indicating his agreement with them, as he did with all of the provisions of the engagement letter, which appears to be a form contract. [*Id.*].

Subsequently, Liberty Bell, via Ms. Tennan, entered into a contract with attorney Brian Aus, who is admitted to practice in the EDNC. According to Mr. Aus, Liberty Bell hired him to enter a general notice of appearance, review the discovery, and advise Mr. Sakoman and Liberty Bell regarding its contents. Liberty Bell had never worked with Mr. Aus before, and Mr. Sakoman had no input regarding the assignment of his case to Mr. Aus .

Ultimately, Mr. Sakoman signed a plea agreement, which Mr. Aus signed as defense counsel. [DE 12]. Ms. Tennan, however, conducted the plea negotiations with the U.S. Attorney's office. Notably, Ms. Tennan never entered a notice of appearance in the EDNC nor did she ever travel to North Carolina. She apparently was conferenced into one of Mr. Aus's three pre-arraignment meetings with Mr. Sakoman via telephone, but it appears from the record that Mr. Sakoman only spoke with Ms. Tennen two to four times during the entire course of the case. Mr. Sakoman never met Ms. Tennan in person.

Mr. Aus represented Mr. Sakoman at all hearings before this Court and was the only counsel of record on the docket. Mr Sakoman pled guilty pursuant to the plea agreement to one count of receipt of child pornography, in violation of 18 U.S.C. §2252(a)(2). [DE 20]. He was sentenced to a total term of 151 months imprisonment on January 3, 2013. [DE 23–24]. Mr. Sakoman paid Liberty Bell $25,000. Mr. Aus never saw the contract between Liberty Bell and Mr. Sakoman, but received $5,000 from Liberty Bell for his representation, which he never discussed with Mr. Sakoman.

Following his sentencing, Mr. Sakoman filed a direct appeal, which was ultimately dismissed by the Fourth Circuit Court of Appeals. He then timely filed this § 2255 motion, in

2

which he challenges only his sentence, arguing that he received ineffective assistance of counsel at sentencing from Mr. Aus.

## DISCUSSION

1. Government's Motion to Dismiss

The government argues that petitioner's motion to vacate should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. "[A] Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). "Under § 2255(b), [u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court must grant a prompt hearing to determine the issues and make findings of fact and conclusions of law with respect thereto." *United States v. Thomas*, 627 F.3d 534, 539 (4th Cir. 2010), (internal quotation and citation omitted).

Here, Mr. Sakoman alleges that because his attorney did not prepare him for sentencing, he made a number of ill-advised, unplanned statements to the Court which resulted in a higher sentence than he would have received had he been prepared for the court proceeding. In light of these allegations, it is the Court's opinion that petitioner raised a colorable claim of ineffective assistance of counsel and there is a possible set of facts to support his claim. Accordingly, the government's motion to dismiss is denied.

3

2. Petitioner's Motion to Vacate

The Court is deeply troubled by the attorney-client relationship in this case. Mr. Sakoman paid $25,000 for Ms. Tennan's legal representation. Despite the fact that she negotiated the plea agreement to which Mr. Sakoman pled, she never entered a notice of appearance in the EDNC. Additionally, she appears to have provided absolutely no legal services to Mr. Sakoman other than negotiating the plea agreement. His primary lawyer was Mr. Aus. The fee arrangement between Mr. Aus and Liberty Bell, however, was never disclosed to Mr. Sakoman. This violates violate North Carolina Rule of Professional Conduct 1.5, which states that fees may only be divided between lawyers not in the same firm where, *inter alia*, "the client agrees to the arrangement, including the share each lawyer will receive, and the agreement is confirmed in writing." N.C. Rules Prof. Conduct 1.5(e)(2). The Court is very concerned by the fact that lawyer who represented Mr. Sakoman in court does not appear to have abided by the Rules of Professional Conduct by revealing the fee arrangement to Mr. Sakoman. The Court is perhaps even more concerned by the fact that the attorney whose actions are most problematic insulated herself from review by contracting out what was undoubtedly the most important event in Mr. Sakoman's life. The Court has no way to reach or address Ms. Tennan's behavior because she never made an appearance in the case, despite taking the lion's share of the fee.

When analyzing a claim of ineffective assistance of counsel, however, the petitioner must prove that the representation he received failed to meet an objective standard of reasonableness, and "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 696 (1984). In analyzing the reasonableness of the representation, "judicial scrutiny of counsel's performance must be highly deferential, and a reviewing court must avoid the biases of

4

hindsight." *Sharpe v. Bell*, 593 F.3d 372, 382 (4th Cir. 2010) (internal citation and quotation omitted).

Despite the Court's grave concerns about the attorney client relationship, the Court is constrained by the law, which requires the Court to conclude that Mr. Aus's performance at sentencing was not constitutionally ineffective. Mr. Sakoman was able to allocute and engaged in a long colloquy with the Court. Mr. Aus wrote and filed a lengthy sentencing memorandum and advanced many arguments in support thereof at the sentencing hearing. He advocated for a downward variance to the statutory mandatory minimum of 60 months. Mr. Aus may not have achieved the result he requested, but the Court's ultimate sentence was at the bottom of the guideline range. While Mr. Aus testified that he visited with Mr. Sakoman three times to prepare for sentencing, Mr. Sakoman stated that the two had only one pre-sentencing meeting. Even if Mr. Aus did meet infrequently with his client prior to sentencing, the Court cannot conclude that this minimal amount of counseling renders a lawyer's representation objectively unreasonable, given Mr. Aus's testimony that he spent between eight and ten hours preparing the sentencing memorandum he filed and given his performance at sentencing. Though hindsight might counsel a different course of action, Mr. Aus's performance did not fall below an objective standard of reasonableness, particularly in light of the deferential standard of review. Moreover, while it is undoubtedly true that the result <u>may</u> have been different had Mr. Aus adequately prepared him for sentencing, Mr. Sakoman presented no evidence to demonstrate that there was a reasonable probability the result would have been different. Mere speculation is insufficient to meet *Strickland's* second prong.

The Court is disturbed by the attorney-client relationship in this case, particularly as it relates to Liberty Bell's involvement. The present standard for ineffective assistance of counsel,

however, does not appear to encompass the attorney-client scenario presented by this case. Accordingly, the Court concludes that Mr. Sakoman was not subjected to ineffective assistance of counsel at sentencing as defined by *Strickland* and denies his motion to vacate.

## CERTIFICATE OF APPEALABILITY

Rule 11 of the Rules Governing Section 2255 Cases provides that "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability shall not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by demonstrating that reasonable jurists would find that an assessment of the constitutional claims is debatable and any dispositive procedural ruling dismissing such claims is also debatable. *Miller-El v. Cockrell*, 537 U.S. 322, 336–38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). Given the very unique situation presented by the attorney-client relationship in this case, the Court finds that reasonable jurists would find this Court's dismissal of petitioner's § 2255 motion debatable. Therefore, a certificate of appealability is granted.

## CONCLUSION

For the foregoing reasons, both motions [DE 36 and 40] are DENIED. A certificate of appealability is GRANTED.

SO ORDERED this **30** day of April, 2015.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

6